**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**ELKINS**

**KIMBERLY LANDIS** and
**ALVA NELSON,** as parents and
guardians of A.N., a minor,

      Plaintiffs,

**v.**                                                                                   **Civil Action No. 2:11-CV-101**
                                                                                      **(BAILEY)**

**JARDEN CORPORATION**; **HEARTHMARK, LLC**
**d/b/a JARDEN HOME BRANDS**; **WAL-MART**
**STORES, INC.**; **C.K.S. PACKAGING, INC.**;
**PACKAGING SERVICE COMPANY, INC.**; **and**
**STULL TECHNOLOGIES, INC.**,

      Defendants/Third-Party Plaintiffs,

**v.**

**KIMBERLY LANDIS** and
**ALVA NELSON**, individually,

      Third-Party Defendants.

**ORDER GRANTING PLAINTIFFS' *DAUBERT* MOTION TO EXCLUDE**
**OR LIMIT TESTIMONY OF DEFENDANTS' EXPERT WITNESSES CONCERNING**
**PARENTAL SUPERVISION AND GRANTING IN PART AND DENYING IN PART**
**PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE TESTIMONY CONCERNING**
<u>**PARENTAL RESPONSIBILITY**</u>

Presently pending before this Court are Plaintiffs' *Daubert* Motion to Exclude or Limit

Testimony of Defendants' Expert Witnesses Concerning Parental Supervision [Doc. 455],

filed November 20, 2013, and Plaintiffs' Motion *in Limine* to Exclude Testimony Concerning

1

Parental Responsibility [Doc. 629], filed December 23, 2013. Defendants Hearthmark, LLC and Wal-Mart Stores, Inc. filed a Memorandum in Opposition [Doc. 547] to Plaintiffs' *Daubert* Motion on December 13, 2013. Defendants Hearthmark, LLC, Wal-Mart Stores, Inc., C.K.S. Packaging, Inc., Packaging Service Company., Inc., and Stull Technologies, Inc., filed a Joint Response in Opposition to Plaintiffs' Motion *in Limine* [Doc. 692] on January 6, 2014.[1] This Court has reviewed the record and the arguments of the parties and for the reasons set forth below, concludes that Plaintiffs' *Daubert* Motion **[Doc. 455]** should be **GRANTED** and that Plaintiffs' Motion *in Limine* **[Doc. 629]** should be **GRANTED IN PART** and **DENIED IN PART**.

## I.     Relevant Factual & Procedural History

This case arises from a tragic accident in which plaintiff A.N., then a seven-year-old boy, was severely burned while using Diamond Natural Fire Starter Gel ("Diamond Gel") in attempting to build a fire. On the evening of the accident, A.N. was preparing for a bath when his mother gave him permission to roast a marshmallow. A.N. went by himself into the basement, where the fireplace was located. Although a fire had been burning in the fireplace previously that day, it appeared to A.N. that the fire was extinguished; A.N. therefore stacked several pieces of kindling wood in the hearth, grabbed the Diamond Gel from beneath a table located by the fireplace, and began squirting the Diamond Gel onto the kindling. As A.N. was applying the gel, the gel allegedly touched a hot ember, causing a flame to "flash back" through the bottle cap and ignite the vapors within the bottle. This

---

[1] As above-captioned defendant Jarden Corporation was dismissed from this case by this Court's Order [Doc. 87] entered March 9, 2012, all remaining defendants responded to Plaintiffs' Motion *in Limine*.

caused an explosion resulting in A.N. suffering severe burns over sixty-five percent of his body.

Plaintiffs Kimberly Landis and Alva Nelson, as parents and guardians of A.N., a minor, filed their Complaint [Doc. 3] asserting product liability causes of action for strict liability, negligence, and breach of warranty against defendants Hearthmark, LLC, the distributor of the Diamond Gel; Stull Technologies, the manufacturer of the bottle cap; C.K.S. Packaging, the manufacturer of the bottle; Packaging Services Company, the producer of the Diamond Gel; and Wal-Mart Stores, the store where A.N.'s parents purchased the Diamond Gel. Defendants thereafter filed various Third-Party Complaints[2] against plaintiffs, arguing *inter alia* that the plaintiffs' alleged negligence in allowing A.N. to use the Diamond Gel without a parent present in the room was an intervening cause of the accident. *See* [Doc. 7 at 14] (C.K.S. Packaging); [Doc. 36 at 21–23] (Wal-Mart); [Doc. 155 at 22–23] (Packaging Service Company); [Doc. 196 at 22–24] (Hearthmark); [Doc. 235 at ¶¶ 1–11] (Stull Technologies). Plaintiffs filed a motion to strike defendant Stull's comparative negligence defense, arguing that the parental immunity doctrine barred all defendants from arguing that the plaintiffs' alleged negligence caused or contributed to A.N.'s injuries. *See* [Doc. 32]. This Court denied plaintiffs' motion to strike without prejudice and invited plaintiffs to seek certification of the issue to the West Virginia Supreme Court of Appeals. [Doc. 148 at 12].

Plaintiffs sought certification, and this Court certified four questions to the West

---

[2] While some of the Third-Party Complaints were initially filed as Counterclaims, this Court's Order Granting Defendants' Motions for Reconsideration [Doc. 220] ordered that the Counterclaims would be considered Third-Party Complaints.

Virginia Supreme Court, which were reformulated and answered as follows in ***Landis v. Hearthmark, LLC***, 750 S.E.2d 280 (W. Va. 2013):

> In a product liability action brought for injury to a child:
>
> 1. Does the parental immunity doctrine preclude a defendant from asserting a contribution claim against the parents of the child? Answer: Yes.
>
> 2. May an allegedly negligent parent nevertheless be included as a third-party defendant for purposes of fault allocation? Answer: Yes.
>
> 3. Does the parental immunity doctrine preclude a defendant from asserting the defense of abnormal product use by the child's parents to establish the negligence or fault of the parents? Answer: No.
>
> 4. Does the parental immunity doctrine preclude a defendant from asserting, as a defense, that the conduct of the parent was an intervening cause of the child's injuries? Answer: No.

*Id.* at 293. Thus, under ***Landis***, while defendants may not assert a claim for recovery against plaintiffs, defendants may put on evidence calculated to establish intervening cause or the parents' comparative negligence, including evidence of (1) the parents' allegedly abnormal use of the Diamond Gel (specifically, their storage of the bottle near the fireplace within reach of a child), and (2) the parents' alleged negligent supervision of A.N.

The sole difference between the instant Motions is that the *Daubert* motion seeks exclusion of defendants' expert witness testimony regarding parental supervision, while the motion *in limine* seeks exclusion not only of defendants' expert testimony, but also of defendants' corporate representative and lay witness testimony regarding parental supervision. *Compare* [Doc. 629 at 1, ¶ 5] *with* [Doc. 455 at 1]. Each will be addressed in turn.

## II.    Discussion

### A.    Plaintiffs' *Daubert* Motion

Pursuant to ***Daubert v. Merrell Dow Pharmaceuticals, Inc.***, 509 U.S. 579 (1993), plaintiffs seek to prohibit defendants' expert witnesses from offering any opinions concerning plaintiffs' alleged failure to appropriately supervise A.N.  Plaintiffs argue that the sufficiency of parental supervision is not an appropriate subject for expert testimony; that even if it were, none of defendants' experts would be qualified to give opinions on same; and that if given, such opinions would arrogate the jury's role as finders of fact.  Defendants respond[3] that their experts' opinions "seek to explain [plaintiffs'] conduct as it pertains to their use of the Diamond Gel," rather than offering personal opinions about whether plaintiffs appropriately supervised A.N. more generally.  [Doc. 547 at 3].

Plaintiffs point specifically to the following experts' testimony on the subject of parental supervision: (1) Richard Roby, P.E., Ph.D, a chemical and mechanical engineer experienced in combustion science, fire protection engineering, and fire origin and cause investigations; (2) Maureen Reitman, Sc.D, a polymer science and engineering expert; (3) Frank Hagan, P.E. a mechanical engineer and failure analysis expert; (4) Christine Wood, Ph.D, a psychologist and human factors[4] expert; (5) Russell Marhefka, a product safety and human factors expert; (6) Nicholas Marchica, a civil engineer; and (7) Carl

_____

[3] As noted above, only Defendants Hearthmark, LLC and Wal-Mart Stores, Inc. filed a Memorandum in Opposition to Plaintiffs' *Daubert* Motion.  However, all defendants expressly incorporate Defendants Hearthmark and Wal-Mart Stores' Response in Opposition into their Joint Response in Opposition to Plaintiffs' Motion *in Limine*.

[4] "Human factors" is the scientific study of the limitations and capabilities of people as they use consumer products.  [Doc. 547-9 at 1].

Abraham, P.E., an engineer with expertise in safety engineering and warnings and instructions.

The admissibility of expert opinion testimony is governed by Federal Rule of Evidence 702, which provides in part:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if . . . the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

Fed. R. Evid. 702. Expert testimony is thus admissible under Rule 702 where the testimony (1) concerns scientific, technical, or other specialized knowledge that (2) will aid the jury in understanding or resolving a fact at issue. *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 2004) (citing *Daubert*, 509 U.S. at 592). While Rule 702 "was intended to liberalize the introduction of relevant expert evidence," in determining admissibility of expert testimony, courts must remain mindful that expert witnesses "have the potential to be both powerful and quite misleading." *Bourne ex rel. Bourne v. E.I. DuPont de Nemours & Co.*, 85 Fed. Appx. 964, 967 (4th Cir. 2004) (citing *Daubert*, 509 U.S. at 596; *Westberry*, 178 F.3d at 261).

In fulfilling its gatekeeping obligation under *Daubert*, this Court must therefore admit only such expert testimony as will actually assist the jury in understanding the evidence or determining a fact in issue. *United States v. Harris*, 995 F.2d 532, 534 (4th Cir. 1993) (citing *Persinger v. Norfolk & W. Ry.*, 920 F.2d 1185, 1188 (4th Cir. 1990)). The expert's role is a limited one: he or she provides the groundwork that enables the jury to make its own informed determinations regarding a specialized question which lies outside of lay competency. *Id.* (citing *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1055 (4th Cir.

1986)) (characterizing expert testimony on a matter within the common knowledge of the jurors as evidence which, "almost by definition, can be of no assistance to a jury.").  Thus, to decide whether expert testimony is appropriate on a particular subject, this Court need only conduct "the common sense inquiry whether the untrained layman would be qualified to determine intelligently . . . the particular issue without enlightenment from those having a specialized understanding of the subject involved."  Fed. R. Evid. 702, advisory committee's note (1972); *Salem v. United States Lines Co.*, 370 U.S. 31, 35 (1962) ("[E]xpert testimony not only is unnecessary but indeed may properly be excluded . . . if all the primary facts can be . . . intelligibly described to the jury, and if they, as men of common understanding, are as capable . . . of drawing correct conclusions from them as are witnesses possessed of special or peculiar training.").

In the opinion of this Court, parental supervision is not an appropriate subject for expert testimony in this matter.  The dangers that may arise when a child is alone near a fireplace are fairly obvious; the jury is fully competent to make its own determination as to what would or would not have happened that night had A.N.'s parents been in the basement with him as he attempted to roast a marshmallow.  While expressing no opinion on what conclusions should be drawn from the facts of this case, this Court is confident that the jury is capable of drawing intelligent ones without the aid of expert testimony regarding the level of parental supervision appropriate under the circumstances.  *See Youngberg v. McKeough*, 534 Fed. Appx. 471, 479 (6th Cir. 2013) (affirming district court's exclusion of expert testimony regarding parents' alleged negligence in allowing their son to drive a boat because "[a] jury is competent to determine" that issue).

This is not, of course, to say that defendants' experts may not testify on other issues within the scope of their expertise that are appropriate subjects for expert testimony. For example, Dr. Christine Wood, one of defendants' warnings and human factors experts, opines in her report:

> Assertions of injury due to a lack of information on a product warning label presumes that product users are ignorant of the potential hazards of using products in particular ways, and/or that the mere act of making safety information available to users will induce them to modify their behavior and thereby reduce the frequency of injuries. In this instance, additional or alternative information [on the Diamond Gel warning label] such as that proposed by [plaintiffs' consumer safety expert] Mr. Kitzes would not have prevented this incident. As discussed above, prior to the incident, [A.N.] and his parents knew not to use the gel if there were embers or burning wood in the fireplace.

[Doc. 456-1 at 2]. In this instance, Dr. Wood's specialized knowledge about how consumers interact with information on a product warning label would be helpful to the jury. The proper design of a product warning label, including the type of information that should be included on same, where the goal is consumer injury reduction, is not within the realm of common knowledge; thus, expert testimony on that issue will assist the jury in determining whether or not Diamond Gel had adequate warnings on its label.

Contrast this with the section of Dr. Wood's report titled "*Parental safety strategies: Supervision, access to hazards, and teaching safety rules*":

> Ms. Landis and Mr. Nelson did not provide consistent rules to [A.N.] regarding his use of the Fire Starter Gel. Ms. Landis testifies that she had allowed [A.N.] to use the gel on occasions prior to the incident. Alternatively, Mr. Nelson testifies that he had "a very strict rule" that [A.N.] was never to use the gel and that it was a product only for adults. . . . [A.N.] testifies that his parents did not instruct him that he could only use the gel when they were present.
>
> Although both of his parents testify that he was not allowed to start fires by himself, [A.N.] testifies that he was never given this instruction. [A.N.]

provides conflicting testimony about whether he had started fires when he was not supervised by his parents . . . . Ms. Landis and Mr. Nelson failed to take steps to reduce the likelihood that [A.N.] could gain access to the Fire Starter Gel and matches. . . . [Ms. Landis] also consented to [A.N.'s] unsupervised use of the fireplace when roasting marshmallows, claiming that [A.N.] knew not to use the gel unsupervised.

*Id.* at 2–3. Nothing in this section of Dr. Wood's report lies outside the realm of lay understanding. Members of the jury are capable of evaluating the testimony that is summarized in this section of Dr. Wood's report for themselves, and are competent to draw intelligent conclusions therefrom without additional enlightenment.

Similarly, Frank Hagan's report sets forth his opinions as to "the cause of the fire starter gel bottle explosion"—"heat and/or flame from a sustained fire (i.e. not a flash fire) on the outer cap surfaces entered the bottle through the cap orifice and igniting a combustible mixture . . . inside the bottle." [Doc. 497-4 at 2, 4]. In elucidating his opinion, Mr. Hagan discusses the mixture of ethanol vapor and air in the bottle, the cap orifice size, the flammability classification of the Diamond Gel, and so on, offering his specialized knowledge in a fashion that could help the jury determine a fact in issue—whether the explosion happened as A.N. testified or not. *Id.*

Contrast this with the portion of Mr. Hagan's report which states "[i]njury occurred because an unsupervised child was improperly using the product to start a fire in a wood burning fireplace." *Id.* at 4. Laypersons are capable of evaluating whether the level of parental supervision over A.N. at the time the accident occurred contributed to his injury; they are not, however, typically capable of understanding the science behind an explosion.

Defendants argue that exclusion of their experts' testimony on this topic would "direct[ly] contraven[e]" the West Virginia Supreme Court's ***Landis*** decision, which, as set

forth above, held in part that a product-liability defendant may assert, as a defense, that a parent's conduct was an intervening cause of a child's injury.  Defendants are incorrect.  Disallowing expert testimony on the subject of parental supervision does not prevent defendants from asserting that the conduct of A.N.'s parents was an intervening cause of A.N.'s injury.  Defendants may introduce, for example, testimony from A.N. and from A.N.'s family eliciting the fact that A.N. was alone at the time of the accident, testimony regarding whether A.N. had roasted marshmallows alone in the past, et cetera.  The construction those and other facts should be given is a subject properly addressed by counsel in opening and closing, rather than by an expert witness.

Consequently, Plaintiffs' *Daubert* Motion to Exclude or Limit Testimony of Defendants' Expert Witnesses Concerning Parental Supervision **[Doc. 455]** will be **GRANTED**.

### B.    Plaintiffs' Motion *in Limine*

Plaintiffs' Motion *in Limine* seeks an Order from this Court declaring testimony "concerning parental responsibility, supervision and/or negligence" from "Defendants' experts, . . . lay witnesses, and corporate representatives" to be inadmissible at trial.  To the extent that Plaintiffs' Motion *in Limine* requests the exclusion of expert testimony, it is **GRANTED** for the reasons set forth in section II.A, *infra*.

With respect to the balance of plaintiffs' Motion, plaintiffs have essentially tacked the phrase "lay witnesses and corporate representatives" onto argument regarding expert witnesses' testimony.  Plaintiffs expressly incorporate their previous *Daubert* Motion by reference in their Motion *in Limine*, and Defendants Hearthmark, LLC and Wal-Mart Stores,

Inc.'s Memorandum in Opposition to Plaintiffs' *Daubert* Motion is expressly incorporated by all defendants in their Joint Response in Opposition to Plaintiffs' Motion *in Limine*. [Doc. 629 at ¶ 2; Doc. 692 at 2 n.1]. This Court suspects that in most instances, the opinions of any corporate representatives or laypersons defendant could call to testify as to parental supervision would not meet the requirements of Federal Rule of Evidence 701, which limits opinion testimony to that which is based on the witness' perception, helpful to determining a fact in issue, and not based on expert knowledge. *See* Fed. R. Evid. 701.

On the other hand, defendants are correct in stating that some evidence on the issue of how A.N. was supervised—such as testimony from A.N. and from A.N.'s family—will be admissible in this matter. The parties have not yet submitted their witness lists. Accordingly, the matter of lay witness and corporate representative testimony is more appropriately dealt with as it arises at trial. Plaintiffs' motion is therefore **DENIED without prejudice** as to lay witnesses and corporate representatives and may be raised at trial if and when necessary.

## CONCLUSION

Consequently, Plaintiffs' *Daubert* Motion to Exclude or Limit Testimony of Defendants' Expert Witnesses Concerning Parental Supervision **[Doc. 455]** is hereby **GRANTED**. Plaintiffs' Motion *in Limine* to Exclude Testimony Concerning Parental Responsibility **[Doc. 629]** is hereby **GRANTED IN PART** and **DENIED IN PART**.

It is so **ORDERED**.

The Clerk is directed to transmit a copy of this Order to counsel of record herein.

**DATED**: January 15, 2014.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE