UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS

**KIMBERLY LANDIS** and **ALVA NELSON,**
as parents and guardians of A.N., a minor,

        Plaintiffs,

        v.                                                    Civil Action No. 2:11-CV-101
                                                                                 (BAILEY)

**HEARTHMARK, LLC,** d/b/a Jarden Home
Brands, **WAL-MART STORES, INC.**,
**C.K.S. PACKAGING, INC.**, **PACKAGING
SERVICE COMPANY, INC.**, and
**STULL TECHNOLOGIES, INC.**,

        Defendants/Third Party Plaintiffs,

        v.

**KIMBERLY LANDIS** and **ALVA NELSON**,
in their individual capacities,

        Third Party Defendants.

## ORDER DENYING IN PART AND GRANTING IN PART
## *DAUBERT* MOTIONS REGARDING WILLIAM KITZES

Pending before this Court are defendant Hearthmark, LLC and Wal-Mart Stores, Inc.'s Motion to Exclude the Testimony of Plaintiffs' Expert William Kitzes [Doc. 457] and C.K.S. Packaging, Inc.'s Motion to Exclude the Opinions and Testimony of William Kitzes [Doc. 483]. The Motions have been fully briefed and are ripe for decision.

In the above Motions, the parties seek to exclude the testimony of the plaintiffs' expert, William Kitzes, under ***Daubert v. Merrell Dow Pharms., Inc.***, 509 U.S. 579 (1993).

The admissibility of expert opinion testimony is governed by Federal Rule of

Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed.R.Evid. 702.

The rules applicable to determining whether expert testimony should be admitted are set forth in **Westberry v. Gislaved Gummi AB**, 178 F.3d 257 (4th Cir. 1999):

> Expert testimony is admissible under Rule 702, then, if it concerns (1) scientific, technical, or other specialized knowledge that (2) will aid the jury or other trier of fact to understand or resolve a fact at issue. *See* **Daubert v. Merrell Dow Pharms., Inc.,** 509 U.S. 579, 592 (1993). The first prong of this inquiry necessitates an examination of whether the reasoning or methodology underlying the expert's proffered opinion is reliable - that is, whether it is supported by adequate validation to render it trustworthy. *See **id**.* at 590 & n. 9. The second prong of the inquiry requires an analysis of whether the opinion is relevant to the facts at issue. *See **id.*** at 591-92. Thus, an expert's testimony is admissible under Rule 702 if it "rests on a reliable foundation and is relevant." **Kumho Tire Co. v. Carmichael,** 526 U.S. 137 (1999)

2

(internal quotation marks omitted).

A district court considering the admissibility of expert testimony exercises a gate keeping function to assess whether the proffered evidence is sufficiently reliable and relevant. *See id.* at 1174. The inquiry to be undertaken by the district court is "a flexible one" focusing on the "principles and methodology" employed by the expert, not on the conclusions reached. **Daubert**, 509 U.S. at 594-95. In making its initial determination of whether proffered testimony is sufficiently reliable, the court has broad latitude to consider whatever factors bearing on validity that the court finds to be useful; the particular factors will depend upon the unique circumstances of the expert testimony involved. *See* **Kumho Tire Co.,** 119 S.Ct. at 1175-76 (footnote omitted). The court, however, should be conscious of two guiding, and sometimes competing, principles. On the one hand, the court should be mindful that Rule 702 was intended to liberalize the introduction of relevant expert evidence. *See* **Cavallo v. Star Enter.,** 100 F.3d 1150, 1158-59 (4th Cir. 1996). And, the court need not determine that the expert testimony a litigant seeks to offer into evidence is irrefutable or certainly correct. *See id.* As with all other admissible evidence, expert testimony is subject to being tested by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." **Daubert,** 509 U.S. at 596. On the other hand, the court must recognize that due to the difficulty of evaluating their testimony, expert witnesses have the potential to "be both

powerful and quite misleading." *Id.* at 595 (internal quotation marks omitted). And, given the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded. See ***United States v. Dorsey***, 45 F.3d 809, 815-16 (4th Cir. 1995).

178 F.3d at 260-61.

The first issue which must be addressed is whether Mr. Kitzes is "qualified as an expert by knowledge, skill, experience, training, or education" to render the opinions which he has proffered. "Under Rule 702, to be 'qualified' as an expert, a witness must have 'knowledge, skill, experience, training, or education' in the subject area in which he intends to testify. Fed.R.Evid. 702. An expert's qualification depends on 'the nature of the opinion he offers.' See ***Gladhill v. Gen. Motors Corp.,*** 743 F.2d 1049, 1052 (4th Cir. 1984)." ***Foster v. Legal Sea Foods, Inc.***, 2008 WL 2945561 (D. Md. July 25, 2008).

Mr. Kitzes was employed with the Consumer Product Safety Commission from 1975 through 1981. After he left the CPSC, Kitzes formed Consumer Safety Associates whose primary business is testifying on behalf of personal injury plaintiffs. Kitzes has a bachelor's degree in history and political science from the University of Wisconsin and a law degree from American University, although he never has practiced as an attorney.

Kitzes is not an engineer or a chemist. He has no degree or certification in any field of science, fire inspection or cause and origin investigation. He has no scientific expertise or training and admits he is unqualified to offer opinions on the chemical properties of substances or engineering issues.

4

On the other hand, William Kitzes is a Board Certified Product Safety Manager and Hazard Control Manager and has been a member of the Human Factors and Ergonomics Society since 1983.  He holds an Executive Certificate in Safety Management from the American Society of Safety Engineers and a Certificate in Risk Communication from the Harvard School of Public Health.  For the past 30 years, he has provided product safety management services to attorneys, corporations and government organizations.

After leaving the CPSC, Mr. Kitzes served as Vice President and General Manager of The Institute for Safety Analysis in Rockville, Maryland for two years.  From 1993-2007, he served as the Chairman of the Florida Consumer's Counsel.  He now runs the company, Consumer Safety Associates, and serves as an expert consultant in product safety for litigants and manufacturers.

He has published numerous articles on safety management and consumer product safety and has lectured across the country on the same topics.  Mr. Kitzes has testified in 120 trials over the past 30 years, 24 of which were in federal court.  Mr. Kitzes has testified numerous times concerning the FHSA and related warnings, precautionary statements, and principal hazards.

In his Report, Mr. Kitzes proffers a series of opinions purporting to address the chemical properties and hazards of Diamond Gel as well as stating legal conclusions:

1. Jarden Home Brands (Jarden) [Hearthmark] and Packaging Services Company, Inc. failed to act as a reasonably prudent manufacturer and distributor to adequately protect consumers from the known catastrophic risks of injury associated with the foreseeable use of the Jarden/Diamond Brand Fire Starter Gel.

2. Jarden and Packaging Services Company, Inc. failed to perform an adequate

5

risk assessment integrating product hazards, the environment and foreseeable consumer use to substantially reduce or eliminate injuries.

3. Jarden and WalMart failed to adequately warn users of the dangers associated with the foreseeable use or misuse associated with the Diamond Fire Starter Gel.

4. Jarden and WalMart failed to comply with the requirements of the Federal Hazardous Substances Act (FHSA) and the Consumer Product Safety Commission (CPSC) regulations at 16 CFR 1500. The Diamond Fire Starter Gel fails to bear a label which adequately and conspicuously states the affirmative hazards and precautionary measures that are intended to provide consumers with the information needed to protect themselves. The Diamond Fire Starter Gel meets the definition of a misbranded hazardous substance under the FHSA and regulations.

5. Based on the failure to comply with the FHSA regulations at 16 CFR 1500 cited above, and the information available to Jarden, Packaging Services Company, Inc. and WalMart that the Fire Starter Gel contained a defect which "could create" a substantial product hazard, Jarden failed to report such information to the CPSC under Section 15(b) of the Consumer Product Safety Act (CPSA) [15 USC 2064(b)] and the regulations at 16 CFR 1115.

6. Section 23 of the CPSA [15 USC 2072] provides that persons injured by reason of a violation of any rule or order issued by the Commission can maintain a private cause of action for damage. Injury to [A.N.] due to Jarden's failure to label the Diamond Natural Fire Starter Gel in compliance with the CPSC regulations at 16 CFR 1500 cited above can fall within such rule or order issued by the Commission.

7. The label of the Jarden Diamond Brand Fire Starter Gel is defective and creates an unreasonably dangerous condition under foreseeable conditions of use. With knowledge of the dangers outlined in their own documents, the removal of the sodium which makes the flame "nearly invisible" and the failure to adequately warn users of the potential for flashback and catastrophic injury, Jarden acted with a clear and conscious disregard for the safety of consumers.

In ***Benedi v. McNeil-P.P.C., Inc.***, 66 F.3d 1378 (4th Cir. 1995), the Court first reviewed the basic holdings of ***Daubert***, and then stressed that ***Daubert*** has not imposed a "rigid test or checklist" of factors:

> In offering these guidelines, the court emphasized that it was not formulating a rigid test or checklist, relying instead on the ability of federal judges to properly determine admissibility. In conclusion, the Court held that the Federal Rules of Evidence, especially Rule 702, assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.

66 F.3d at 1384 (internal citation and quotation omitted).

In ***Harris v. Norfolk Southern Ry. Co.***, 2013 WL 1136644, *3 (S.D. W.Va. March 18, 2013), Judge Goodwin stated that "As stated in ***Westberry***, 'The inquiry to be undertaken by the district court is "a flexible one" focusing on the "principles and methodology" employed by the expert, not on the conclusions reached.' ***Westberry***, 178 F.3d at 261 (quoting ***Daubert***, 509 U.S. at 594-95)."

Judge Goodwin added, "I 'need not determine that the proffered expert testimony

is irrefutable or certainly correct' - '[a]s with all other admissible evidence, expert testimony is subject to testing by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof."' **United States v. Moreland,** 437 F.3d 424, 431 (4th Cir. 2006) (quoting **Daubert,** 509 U.S. at 596 (alteration in original); *see also* **Md. Cas. Co. [v. Therm-O-Disc, Inc.**], 137 F.3d at 783 (noting that '[a]ll **Daubert** demands is that the trial judge make a "preliminary assessment" of whether the proffered testimony is both reliable ... and helpful')." **Id**.

This Court has carefully reviewed the 535 pages of materials submitted in connection with these Motions and finds that the Motion should be sustained as to several areas. In so doing, this Court's concerns with Mr. Kitzes' proposed testimony echo those of Judge Gaughan in **S.S. v. Leatt Corp**., 2013 WL 3714142, *18 (N.D. Ohio July 15, 2013):

> Upon review of Kitzes's report, however, the Court agrees with Leatt that Kitzes's opinion testimony is excludable under **Daubert** and Fed.R.Evid. 702. Even acknowledging that Kitzes has expertise in the field of "product safety management" and that such expertise is or could be relevant to some issue or issues raised in the case, there is insufficient information and analysis in Kitzes's report to conclude that Kitzes employed a "reliable" methodology in reaching his "conclusions" such that his opinions are admissible. The "opinions" Kitzes purports to provide, set forth above, are not cogent (or cogently linked to the issues raised in the case) and are not supported by any discernible rationale or methodology. Kitzes, for example, does not

8

>substantively analyze any specific purported conduct (or omission) of Leatt or explain how Leatt's conduct fell short of any safety management principle. Rather, Kitzes merely makes conclusory statements in his opinions that are devoid of any discernible analysis or methodology and states facts that the jury does not need his help or expertise to determine. Plaintiffs' arguments in support of Kitzes's proposed testimony are unpersuasive.
>
>Defendant's motion to exclude the proposed expert testimony of Kitzes is granted. The Court finds that Kitzes's proposed testimony fails to meet the requirements of Fed.R.Evid. 702 and **Daubert**.

2013 WL 3714142, at *18. See also **Clark v. Shores**, 201 W.Va. 636, 639, 499 S.E.2d 858, 861 (1997) ("Mr. Kitzes' affidavit, at best, is conclusory and lacks any relevant analysis.").

With regard to Mr. Kitzes' first opinion (that the Movants failed to act as a reasonably prudent manufacturer and distributor), several courts have prohibited this testimony. See **Leatt,** supra; **Flock v. Scripto-Tokai Corp.**, 2001 WL 36390120 (S.D. Tex. September 28, 2001) ("Kitzes may not proffer testimony stating a legal conclusion, *e.g.,* using language specifically stating that any party 'failed to act as a reasonably prudent manufacturer/distributor,' that the Aim 'N Flame lighter at issue was 'unreasonably dangerous,' that any party 'acted with a conscious indifference and reckless disregard,' and similar legal terminology." citing **United States v. Wood**, 207 F.3d 1222, 1235-36 (10th Cir. 2000); **Sowell v. United States,** 198 F.3d 169, 171-72 (5th Cir. 1999); **Askanase v. Fatjo,** 130 F.3d 657, 672-73 (5th Cir. 1997); **Torres v. County of Oakland,** 758 F.2d 147, 150-

51 (6th Cir. 1985); **Owen v. Kerr-McGee Corp.**, 698 F.2d 236, 239-40 (5th Cir. 1983); **Strong v. E.I. DuPont de Nemours Co.**, 667 F.2d 682, 685-86 (8th Cir. 1981)); **Landrin v. MGA Entertainment, Inc.**, 2006 WL 5249735, *10 n. 4 (S.D. Fla. January 5, 2006).

With respect to the second opinion (that the Movants failed to perform an adequate risk assessment), Kitzes merely makes the conclusory statement that Movants' risk assessment was "inadequate" without in any manner indicating why or how. He does not even address Movants' risk assessment. Kitzes does not cite any industry standards or identify any tests that he contends Hearthmark should have, but failed to, perform. At his deposition, Kitzes admitted that he had not even reviewed Hearthmark's product safety plan and could not say that the defendants' safety "protocol was necessarily bad." (Kitzes Dep. at 44, 100.).

He acknowledged that before selling the product, Hearthmark investigated whether there had been incidents with similar products, investigated the industry standards governing the use of alcohol-based fire starters, took steps to ensure the product was optimal for the characteristics of wood and pellet stoves and obtained independent testing. When asked for support for this opinion at his deposition, Kitzes was unable to identify even a single test that was not performed but should have been. (*Id.* at 99 ("I do not think that I know of other testing, maybe somebody else does, that they needed to do to understand the hazards in the product."); *see also id.* at 101-02 ("A. I'm not the guy to ask how to do those tests because it's outside my area, but those tests need to be done. Q. Can you tell me what tests those are? A. No.")).

With respect to the third opinion (that Movants failed to adequately warn), Kitzes

10

does not claim that the labeling for Diamond Gel was inadequate to alert consumers to product hazards because, for example, of unclear or inconspicuous language. He certainly does not claim that the label failed to warn consumers effectively that the product and its vapors were flammable, could irritate the skin or eyes, and that it should be kept away from children. Kitzes instead opines that Diamond Gel presents an "explosion" and "flashback" risk if applied to embers or a fire with respect to which Moving Defendants should have warned. (Kitzes Rept. at 30).

Determining what hazards a consumer product presents involves scientific and technical analyses a "warnings" expert, such as Kitzes claims to be, is unqualified to make. Kitzes does not rely upon any opinions proffered by plaintiffs' other experts to bridge the gap between his lack of expertise and his conclusions about the risks which should have been identified on the label. (Kitzes Rept. at 31-32 ("Materials Reviewed")).

With respect to Opinions 4, 5 and 6, dealing with the provisions and requirements of the Federal Hazardous Substances Act and the Consumer Product Safety Act, such opinions will be excluded. **Payne v. A.O. Smith Corp.**, 627 F.Supp. 226, 228 (S.D. Ohio 1985); **Landrin**, *supra* at *10.

With respect to Mr. Kitzes' final opinion (that the label created an "unreasonably dangerous condition" and that the Movants acted with a "clear and conscious disregard for the safety of consumers"), the same is excluded. **Flock v. Scripto-Tokai Corp.**, 2001 WL 36390120 (S.D. Tex. September 28, 2001) ("Kitzes may not proffer testimony stating a legal conclusion, *e.g.,* using language specifically stating that any party 'failed to act as a reasonably prudent manufacturer/distributor,' that the Aim 'N Flame lighter at issue was

11

'unreasonably dangerous,' that any party 'acted with a conscious indifference and reckless disregard,' and similar legal terminology." citing **United States v. Wood**, 207 F.3d 1222, 1235-36 (10th Cir. 2000); **Sowell v. United States**, 198 F.3d 169, 171-72 (5th Cir. 1999); **Askanase v. Fatjo**, 130 F.3d 657, 672-73 (5th Cir . 1997); **Torres v. County of Oakland**, 758 F.2d 147, 150-51 (6th Cir. 1985); **Owen v. Kerr-McGee Corp.**, 698 F.2d 236, 239-40 (5th Cir. 1983); **Strong v. E.I. DuPont de Nemours Co.**, 667 F.2d 682, 685-86 (8th Cir. 1981)); **In re Yamaha Motor Corp. Rhino ATV Products Liability Litigation**, 816 F.Supp.2d 442, 459-60 (W.D. Ky. 2011).

In summation, all of the opinions reflected in Mr. Kitzes report are excluded. Mr. Kitzes may, however, "explain to the jury what a risk assessment is and describe to them the steps a manufacturer would take to perform the risk assessment of a consumer product, but he may not comment on the conclusions reached by defendant in conducting its safety analysis. Nor may he testify as to a causal connection between defendant's safety assessment and plaintiffs' injuries." **Kent v. Robert Bosch Tool Corp.**, 2009 WL 5492128, *2 (D. Mass. January 23, 2009).

Accordingly, defendant Hearthmark, LLC and Wal-Mart Stores, Inc.'s Motion to Exclude the Testimony of Plaintiffs' Expert William Kitzes **[Doc. 457]** and C.K.S. Packaging, Inc.'s Motion to Exclude the Opinions and Testimony of William Kitzes [**Doc. 483**] are **GRANTED IN PART** and **DENIED IN PART**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: January 16, 2014.

                                                JOHN PRESTON BAILEY
                                                UNITED STATES DISTRICT JUDGE