IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS

**KIMBERLY LANDIS** and
**ALVA NELSON,** as parents and
guardians of A.N., a minor,

      Plaintiffs,

v.                                       Civil Action No. 2:11-CV-101
                                       (BAILEY)

**JARDEN CORPORATION**; **HEARTHMARK, LLC**
**d/b/a JARDEN HOME BRANDS**; **WAL-MART**
**STORES, INC.**; **C.K.S. PACKAGING, INC.**;
**PACKAGING SERVICE COMPANY, INC.**; **and**
**STULL TECHNOLOGIES, INC.**,

      Defendants/Third-Party Plaintiffs,

v.

**KIMBERLY LANDIS** and
**ALVA NELSON**, individually,

      Third-Party Defendants.

### ORDER DENYING DEFENDANT HEARTHMARK, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON ITS CROSS-CLAIM AGAINST DEFENDANT PACKAGING SERVICE CO. AND DENYING DEFENDANT PACKAGING SERVICE CO.'S MOTION FOR SUMMARY JUDGMENT ON ITS CONTRACTUAL CROSS-CLAIM AGAINST DEFENDANT HEARTHMARK, LLC

Presently pending before this Court are Defendant Hearthmark, LLC's Motion for Partial Summary Judgment on its Cross-Claim Against Defendant Packaging Service Company ("PSC") [Doc. 520] and Defendant PSC's Motion for Summary Judgment on its Contractual Cross-Claim Against Hearthmark and on Hearthmark's Counterclaims/

1

Crossclaims Against It [Doc. 508], both filed November 25, 2013. No Response was filed to PSC's Motion; however, PSC filed its Response [Doc. 570] to Hearthmark's Motion on December 20, 2013, and Hearthmark filed its Reply [Doc. 665] on January 3, 2014. Because this Court finds that the parties' Motions **[Docs. 508, 520]** are premature, both will be **DENIED without prejudice**.

I. Background

As all parties are well aware, this case arises from a tragic accident in which plaintiff A.N., then a seven-year-old boy, was severely burned while using Diamond Natural Fire Starter Gel ("Diamond Gel") in attempting to build a fire. Plaintiffs' Complaint [Doc. 3] brings claims against Hearthmark for strict liability, breach of warranty, and negligence, and against PSC for strict liability and negligence. Specifically, plaintiffs allege that both the cap and the bottle applied to the Diamond Gel were defectively designed and manufactured, rendering the product not reasonably safe for its intended use, as (1) the cap was inadequate to prevent a heat source from flashing back up into the bottle and igniting the gel inside and (2) the bottle was inadequate to safely hold the Diamond Gel given its explosive properties.[1] *See, e.g.*, [Doc. 3 at ¶¶ 19–24].

In light of the claims asserted by plaintiffs, both Hearthmark and PSC asserted cross-claims against one another for contractual indemnity[2]; the instant cross-motions for

---

[1] Plaintiffs also allege that the product's labeling and warnings were inadequate. *See, e.g.*, [Doc. 3 at ¶ 23]. Those allegations are not at issue in the instant cross-motions. *See* [Doc. 521 at 12 n.6].

[2] PSC also claims that it is entitled to "common law implied indemnification and/or contribution" from Hearthmark. [Doc. 39 at ¶ 3]. PSC's brief in support [Doc. 509] of its Motion, however, presents argument related only to its contractual indemnity claim.

2

summary judgment followed.  *See* [Doc. 173 at 4] (Hearthmark); [Doc. 39 at ¶ 4] (PSC). The cross-motions concern a contract packaging agreement executed by PSC and Hearthmark—the Blending and Packaging Services Agreement ("Agreement") [Doc. 509-1]—which articulates the legal relationship between PSC and Hearthmark with respect to the Diamond Gel.  The agreement contains a choice-of-law provision which states that the "validity, interpretation, and performance of this Agreement shall be governed and construed in accordance with the laws of the State of Delaware."  [Doc. 509-1 at ¶ 17].

Each party to the Agreement agreed to indemnify the other for liability arising from specified types of claims related to the Diamond Gel.  Hearthmark agreed to indemnify PSC in accord with the following provision:

> **Except for PSC's negligence** or willful misconduct, [Hearthmark] hereby assumes all risks and liability, including but not limited to, the marketing, merchandising, shipping, handling, storage, distribution, and use of the Product and agrees to indemnify, defend, and hold PSC . . . harmless from all liability, losses, damages, claims, judgments, expenses, attorney's fees and liability of whatever nature, including claims by [Hearthmark] and any third parties (including, without limitation, [Hearthmark]'s employees and customers), arising out of or related to, including but not limited to, the **marketing, merchandising, shipping, handling, storage, distribution, and use of the Product** or any breach of [Hearthmark]'s representation, warranties, or covenants contained herein.

[Doc. 509-1 at ¶ 9] (emphasis added).  PSC argues that because A.N. was "using" the Diamond Gel at the time of his accident, plaintiffs' claims "aris[e] out of or relate[ ] to . . . the . . . use of the Product" within the meaning of the indemnity provision, entitling PSC to indemnification from Hearthmark.

PSC, however, agreed to indemnify Hearthmark in accord with the following provision:

> PSC hereby assumes all risks and liability for the Blending and Packaging of

3

>   the Product and agrees to indemnify, defend, and hold [Hearthmark] . . . harmless from all liability, losses, damages, claims, judgments, expenses, attorney's fees and liability of whatever nature, including claims by PSC, and any third parties (including, without limitation, PSC's employees), arising out of or related to[ ] the **Blending or Packaging of the Product, or any breach of PSC's representation, warranties, or covenants contained herein.**

[Doc. 509-1 at ¶ 9] (emphasis added).

The warranty provision of the Agreement provides in pertinent part:

>   PSC warrants that all Products delivered hereunder shall be (i) new and merchantable, (ii) free from any defects in workmanship or material, and (iii) conform to applicable Specifications.
>
>   PSC makes no other warranty and [Hearthmark] assumes all responsibility for the distribution of the marketing and technical information and for the performance of the Products.

*Id.* at ¶ 7. "Blending" and "Packaging" are defined within the Agreement as follows:

>   Blending refers to the combining of individual chemical ingredients to create the finished fire starter gel liquid. . . . Packaging refers to the assembly of the final product including filling of the bottles, cap application, label application, date coding of the bottles, placement of the bottles into the box, taping the box, marking the box with the agreed language, stacking of the boxes onto pallets and wrapping the pallets in a manner suitable for normal shipment by common carrier.

Hearthmark contends that it is owed indemnity from PSC for two reasons: first, because plaintiffs are pursuing claims of defect that, if proven, would establish that PSC breached its warranties, triggering PSC's obligation to indemnify Hearthmark; and second, because, as plaintiffs' claims of defect involve the cap and bottle used to package the Diamond Gel, the claims "aris[e] out of or relate[ ] to the Blending or Packaging of the Product" within the meaning of the indemnity provision, entitling Hearthmark to indemnification from PSC.

4

## II. Legal Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322–23 (1986). Thus, a summary judgment motion should be granted if the nonmovant fails to make a showing sufficient to establish the existence of an essential element of his claim or defense upon which he bears the burden of proof. **Celotex**, 477 U.S. at 323. That is, once the movant shows an absence of evidence on one such element, the nonmovant must then come forward with evidence demonstrating there is indeed a genuine issue for trial. **Id.** at 323–24. The existence of a mere scintilla of evidence supporting the nonmovant's position is insufficient to create a genuine issue; rather, there must be evidence on which a jury could reasonably find for the nonmovant. **Anderson v. Liberty Lobby**, 477 U.S. 242, 252 (1986).

## III. Discussion

### A. Choice of Law

Before proceeding to the merits, this Court must first determine the proper law to apply. As previously noted, the Agreement contains a choice-of-law clause stating that the Agreement is governed by Delaware law. [Doc. 521-1 at ¶ 17]. Although PSC concedes that the applicable legal principles will be the same "[r]egardless of the application of West Virginia or Delaware law," PSC nevertheless argues that the parties' choice-of-law clause should be invalidated, and that West Virginia law should apply. This Court disagrees.

A federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits. **Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.**, 738 F.3d 95, 100 (4th

Cir. 2013). As this Court is presently sitting in diversity, West Virginia choice-of-law rules apply to this matter.

The Supreme Court of Appeals of West Virginia draws its analytical framework related to choice-of-law provisions from the Restatement (Second) of Conflict of Laws § 187. Section 187 provides that a choice-of-law provision should be upheld unless (1) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (2) application of the laws of the chosen jurisdiction would offend the public policy of the state whose law would otherwise apply. **Gen. Elec. Co. v. Keyser**, 166 W.Va. 456, 462, 275 S.E.2d 289, 293 (1981) (citing Restatement (Second) of Conflict of Laws § 187 (1971)); *see also* **Manville Personal Injury Settlement Trust v. Blankenship**, 231 W.Va. 637, 749 S.E.2d 329, 336 (2013). This Court finds that neither exception applies, and thus that Delaware law should be applied in interpreting the Agreement.

Here, the parties have only one contact with the state of Delaware: Hearthmark is incorporated in Delaware. Although the West Virginia Supreme Court has never considered the precise question, this Court is of the opinion that where application of a foreign state's law does not offend West Virginia public policy, one party's incorporation in that state is a contact sufficient to allow the parties to choose its law to govern their contract. This holding is consistent not only with the West Virginia Supreme Court's ruling in **Keyser**, as described below, but also with § 187 of the Restatement.

The comments to § 187 note that the "substantial relationship" test is met "where one of the parties is domiciled" in the chosen state, and a corporation's "domicile" is its

6

state of incorporation. *Compare* Restatement (Second) of Conflict of Laws § 187 cmt. f, *with* Black's Law Dictionary 523 (8th ed. 2004). Courts consistently so hold when applying § 187. *See, e.g.*, **Valley Juice Ltd. v. Evian Waters of France, Inc.**, 87 F.3d 604, 608 (2d Cir. 1996) ("[T]he Restatement . . . makes clear that the incorporation of one party in the state whose law is chosen under the contract is sufficient to satisfy any applicable contacts requirement."); **Carlock v. Pillsbury Co.**, 719 F. Supp. 791, 807 (D. Minn. 1979) ("A party's incorporation in a state is a contact sufficient to allow the parties to choose that state's law to govern their contract."); **Schroeder v. Rynel, Ltd.**, 720 A.2d 1164, 1166 (Me. 1998) ("Incorporation in a state constitutes a substantial relationship."); **Nedlloyd Lines B.V. v. Superior Court**, 834 P.2d 1148, 1153 (Cal. 1992) ("The incorporation of these parties in Hong Kong provides the required 'substantial relationship.'").

Hearthmark's incorporation in Delaware therefore provides the required "substantial relationship"—so long as the application of Delaware law does not offend West Virginia public policy. This was the West Virginia Supreme Court's holding in **Keyser**: where the parties' only contact with the chosen state is one party's incorporation, *and* application of that state's law would offend West Virginia public policy, the choice-of-law provision is invalid. In **Keyser**, the West Virginia Supreme Court invalidated a choice-of-law provision where the parties' only contact with the designated jurisdiction was one party's state of incorporation. **Keyser**, 166 W.Va. at 466. The court emphasized, however, that in addition to that paucity of contact, application of the designated jurisdiction's law would significantly change the rules of decision in the case. *Id.* at 465–66. Thus, because there existed "only scant contact with [the designated jurisdiction] in [the] transaction *and* [its] law, however

7

construed, would not effectuate our public policy," the court invalidated the clause. *Id.* at 466. Finally, the court added that the clause itself was "classic boilerplate," making it unlikely that meaningful bargaining over the provision took place. *Id.* at 465 (emphasis added).

Here, in contrast, PSC offers no cogent argument that the public policy of West Virginia would be offended by application of Delaware law to the Agreement; indeed, as previously noted, PSC states that Delaware and West Virginia "interpret contracts in the same manner." [Doc. 509 at 8]. Additionally, Hearthmark argues, and PSC does not dispute, that "[f]ollowing month long negotiations, and the exchange of multiple draft agreements, Hearthmark and PSC assented to the designation of Delaware law"; the choice-of-law provision was therefore a meaningful part of the parties' bargain. [Doc. 521 at 7]. This Court can therefore discern no reason to invalidate the choice-of-law provision. Delaware law applies to the instant contractual dispute.

**B. Indemnification**

As set forth above, both PSC and Hearthmark seek summary judgment on their contractual cross-claims against one another. Both argue that to the extent they are found liable to the plaintiffs, they are entitled to indemnification from the other based on the indemnity provisions of the Agreement.

Neither PSC nor Hearthmark have been found liable on Plaintiffs' claims. It has yet to be determined in what fashion or whether the Diamond Gel is defective or if PSC or Hearthmark were negligent, and the answers to these questions will affect the parties' rights under the Agreement. This Court today denied both parties' motions for summary

judgment on plaintiffs' Complaint, finding that factual issues exist precluding entry of same. *See* [Doc. 785] (Hearthmark); [Doc. 786] (PSC). The instant cross-motions are therefore premature. *See, e.g.*, **Doe v. City of Chicago**, 360 F.3d 667, 672 (7th Cir. 2004) ("We have warned repeatedly against trying to resolve indemnity before liability.") This Court has no power to offer an advisory opinion based on hypothetical facts. U.S. Const. art. III, § 2.

Consequently, Defendant Hearthmark, LLC's Motion for Partial Summary Judgment on its Cross-Claim Against Defendant Packaging Service Company ("PSC") **[Doc. 520]** and Defendant PSC's Motion for Summary Judgment on its Contractual Cross-Claim Against Hearthmark and on Hearthmark's Counterclaims/ Crossclaims Against It **[Doc. 508]** are hereby **DENIED without prejudice**.

It is so **ORDERED**.

The Clerk is directed to transmit a copy of this Order to counsel of record herein.

**DATED:** February 26, 2014.

JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE