IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS

**KIMBERLY LANDIS** and
**ALVA NELSON,** as parents and
guardians of A.N., a minor,

      Plaintiffs,

v.                                                                         Civil Action No. 2:11-CV-101
                                                                       (BAILEY)

**JARDEN CORPORATION**; **HEARTHMARK, LLC**
d/b/a **JARDEN HOME BRANDS**; **WAL-MART
STORES, INC.**; **C.K.S. PACKAGING, INC.**;
**PACKAGING SERVICE COMPANY, INC.**; **and
STULL TECHNOLOGIES, INC.**,

      Defendants/Third-Party Plaintiffs,

v.

**KIMBERLY LANDIS** and
**ALVA NELSON**, individually,

      Third-Party Defendants.

**OMNIBUS ORDER ON MOTIONS *IN LIMINE* CONCERNING
ADMISSIBILITY OF OTHER-PRODUCT & OTHER-INCIDENT EVIDENCE**

Presently pending before this Court are the following Motions *in Limine*, all filed December 23, 2013:

    (1)    Defendant Packaging Service Company ("PSC")'s Motion to Prohibit the Admission of Evidence, Testimony, or Documents Related to Recalls and Referencing Products and Incidents Unrelated **[Doc. 620]**, joined by defendant Stull [Doc. 685];

    (2)    Defendants Hearthmark and Wal-Mart's Motion to Exclude Evidence Relating to Other Fuel Products **[Doc. 621]**, joined by defendants Stull [Doc. 685] and PSC [Doc. 672];

    (3)    Defendant C.K.S. Packaging ("CKS")'s Motion to Exclude Certain Materials

1

and Testimony **[Doc. 631]**, joined by defendants Stull [Doc. 685] and PSC [Doc. 671];[1]

(4) Defendant Stull's Motion to Preclude any Testimony or Evidence of "Other Incidents" **[Doc. 637]**, joined by defendant PSC [Doc. 676]; and

(5) Plaintiffs' Motion to Prevent Defendants From Introducing Evidence or from Arguing the Non-Reporting, Non-Occurrence, or Infrequent Occurrence of Prior Incidents and Accidents **[Doc. 624]**.

On January 6, 2014, plaintiffs filed a single Response [Doc. 677] opposing Motions (1)–(4) and defendants filed three Responses [Docs. 698, 691, 700][2] opposing Motion (5). No Replies were filed. The Motions are now ripe for decision. For the reasons set forth below, Defendants' Motions (1)–(4) **[Docs. 620, 621, 631, 637]** will be **GRANTED IN PART** and **DENIED IN PART**, and Plaintiffs' Motion **[Doc. 624]** will be **DENIED**.

I. **Background**

As all parties are well aware, this case arises from a tragic accident in which plaintiff A.N., then a seven-year-old boy, was severely burned while using Diamond Natural Fire Starter Gel ("Diamond Gel" or "Gel"), an alcohol-based fire starter product, in attempting to build a fire. Plaintiffs allege that given the Diamond Gel's low flash point—the temperature at which the Gel gives off enough vapor to form an ignitable mixture with air—the Gel was defectively designed and unsafe for its intended and reasonably foreseeable uses. *See, e.g.*, [Doc. 3 at ¶¶ 13–17]. Plaintiffs further allege that the bottle

---

[1] To the extent the remainder of CKS's Motion is not moot, it will be addressed in a separate Order.

[2] Hearthmark, Wal-Mart, and Stull filed a Joint Response [Doc. 698]; CKS filed a Response [Doc. 691] which incorporated the Hearthmark/Wal-Mart/Stull Response by reference; and PSC filed a Limited Joinder [Doc. 700] joining in Section B of the Hearthmark/Wal-Mart/Stull Response.

used to contain the Gel had unacceptable wall thickness variations and that the cap used on the bottle lacked a flame arrestor, rendering both components defective. *See, e.g.*, *id.* at ¶¶ 43–44, 60–61.

Plaintiffs wish to admit at trial evidence related to a number of other alcohol-based fire starter products; defendants' instant Motions *in Limine* seek to preclude the admission of that evidence. Specifically, defendants object to admission of the following:

(1) Public documents concerning the 1991 U.S. Consumer Product Safety Commission ("CPSC") recall of Eco-Lite Charcoal Starter and investigative materials compiled by the CPSC prior to the recall;

(2) The deposition testimony of David Neubarth, who was injured while using Eco-Lite in 1990;

(3) The 2005 Cederberg letter and accompanying papers, which make reference to the products Eco-Lite, Eco-Start Charcoal Lighter Fuel, and Ultra-Lite All Purpose Fire Starter (a/k/a Enferno a/k/a Eco-Char); and

(4) The firepots-and-gel-fuel materials, including the 2011 CPSC Briefing Package on Firepots and Gel Fuel and the 2013 National Institute of Standards and Technology Evaluation of Firepots and Gel Fuels.

Defendants contend that all of this evidence should be excluded pursuant to Federal Rules of Evidence 401, 402, and 403, arguing that (1) the evidence is irrelevant because the products and incidents described therein are not substantially similar to the Diamond Gel and A.N.'s accident, and (2) even if the evidence is relevant, its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, and needless presentation of cumulative issues.

Similarly, plaintiffs' Motion *in Limine* seeks to exclude, pursuant to Rules 401, 402, and 403, any evidence or argument proffered by defendants concerning the alleged *absence* of other accidents, incidents, or lawsuits involving the Diamond Gel itself.

3

Plaintiffs argue that (1) such evidence is irrelevant, as the absence of other incidents does not tend to prove safety, and (2) even if the evidence is relevant, its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.

**II.     Legal Standard**

Evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence.  Fed. R. Evid. 401.  In the product liability context, evidence of other incidents involving a product identical or similar to the product which allegedly injured plaintiff is highly relevant; such evidence may be used to prove product defect, to demonstrate negligence, or to show defendant had actual or constructive notice of a product's defective nature.  *See, e.g.*, ***Benedi v. McNeil-P.P.C., Inc.***, 66 F.3d 1378, 1386 (4th Cir. 1995) (characterizing certain reports detailing incidents similar to the incident at issue as "highly probative"); ***McKnight ex rel. Ludwig v. Johnson Controls, Inc.***, 36 F.3d 1396, 1410 (8th Cir. 1994) (detailing the potential issues of proof to which other-incident evidence may be relevant).

Because other-incident evidence also has the potential for great prejudicial impact, its admissibility is policed by the "substantial similarity" test.  ***Hessen ex rel. Allstate Ins. Co. v. Jaguar Cars, Inc.***, 915 F.2d 641, 649 (11th Cir. 1990).  The "substantial similarity" test requires that the legally operative facts in the incidents sought to be admitted be substantially similar to those in the case at bar.  ***Smith v. Ingersoll-Rand Co.***, 214 F.3d 1235, 1246 (10th Cir. 2000).  Whether an incident is "substantially similar" such that it may be admitted thus depends upon the plaintiff's theory of the case.  *Id.* at 1246–47.

Where other-incident evidence is offered to prove the existence of a defect or negligence, a high degree of similarity is required; when offered merely to establish that defendant had notice of a defect, the standard is relaxed. *Benedi*, 66 F.3d at 1386; ***Johnson v. Ford Motor Co.***, 988 F.2d 573, 580 (5th Cir. 1993) (requiring "reasonable similarity" when evidence is offered to prove notice). Of course, even where sufficient similarity is shown, evidence of other incidents may nevertheless be excluded where its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury. *See* Fed. R. Evid. 403.

## III. Discussion

### A. Defendants' Motions

As set forth below, this Court concludes that (1) the public documents directly related to the 1991 Eco-Lite recall, including the CPSC press release and recall packet, (2) the CPSC Preliminary Staff Determination report, and (3) the Cederberg letter and accompanying documents are admissible for purposes of proving notice, but inadmissible for purposes of proving negligence or existence of a defect. This Court further finds that the remaining CPSC investigative materials, the Neubarth deposition testimony, and the firepots-and-gel-fuel materials are inadmissible.

#### i. 1991 Eco-Lite Recall & Investigative Materials

In April 1991, Anderson Chemical Company[3], in cooperation with the CPSC, issued a recall for its product Eco-Lite Charcoal Starter following a CPSC investigation. Plaintiffs in this action produced both the official recall press release and the complete CPSC

---

[3] Lantec, Inc. is a wholly-owned subsidiary of Anderson Chemical Company.

investigative file as part of their Initial Disclosures. The investigative file contains over two hundred pages of material, which may be roughly grouped as follows: (1) correspondence exchanged between the CPSC and Anderson Chemical Company throughout the course of the investigation; (2) internal CPSC correspondence and notes detailing steps taken during the investigation; (3) information concerning other alcohol-based fire-starter products; (4) materials related to consumer complaints and lawsuits filed by Eco-Lite consumers; (5) letters requesting information sent from CPSC attorneys to attorneys who represented Eco-Lite consumers; (6) materials directly related to the recall; and (7) several reports compiling the findings of CPSC investigators.

### 1. Correspondence, Internal Notes, & Letters to Attorneys

This Court concludes that the documents falling within categories (1)[4], (2)[5], and (5)[6] are irrelevant and therefore inadmissible under Federal Rules of Evidence 401 and 403.

---

[4] This category includes the following documents: Feb. 6, 1991 Letter [Doc. 677-4 at 22–24, 33–36]; Apr. 5, 1991 Letter [*Id.* at 11–12]; Apr. 16, 1991 Letter [Doc. 677-2 at 12–13, 53–54]; Resp. to Apr. 19, 1991 Letter [*Id.* at 51–52]; Nov. 20, 1991 Letter [*Id.* at 14–19, 25–27]; Anderson/Yelenik Letter [*Id.* at 9–11, 20–22, 28–33]; Anderson/Yelenik Letter [*Id.* at 5–6, 23–24; Doc. 677-4 at 5–6]; Stanton/Dovel Materials [Doc. 677-5 at 55; Doc. 677-3 at 2–4, 20].

[5] This category includes the following documents: Sep. 1990 Note [Doc. 677-2 at 4]; Ron/Alan Note [*Id.* at 34–35]; Note & Chronology [*Id.* at 36–40]; Oct. 17, 1991 Route Slip [*Id.* at 41]; Complete Packaging Servs. Fax [*Id.* at 43–44]; Bachkes Notes [*Id.* at 46–48, 50; Doc. 677-3 at 6]; Investigative Notes [Doc. 677-3 at 51–58; Doc. 677-4 at 39]; Consent Resolution [Doc. 677-3 at 45]; Anderson Chem. Co. Financial Info. [*Id.* at 46–50]; Product Safety Assessment Requests [Doc. 677-4 at 2–3, 14; Doc. 677-3 at 59]; Admin. Materials [Doc. 677-4 at 4, 7, 13, 18–21, 32, 38, 51; Doc. 677-5 at 4, 16, 36, 41, 43].

[6] This category includes the following documents: Mar. 6, 1991 Email [Doc. 677-5 at 5–7]; Friedman Cover Letter [Doc. 677-3 at 55]; Goldman Fax [*Id.* at 14–15]; Jun. 18, 1991 Letter [*Id.* at 7]; Jun. 26, 1991 Letter [*Id.* at 5]; Bachkes Letter [*Id.* at 41; Doc. 677-2 at 49]; Harris Letter [Doc. 677-2 at 8, 45]; Meltzer Letter [*Id.* at 42]; Sept. 4, 1991 Letter [*Id.* at 7].

None of the materials in these categories tend to make any fact of consequence to this action more or less probable than it would be without the materials, as the vast majority of same are cover letters requesting information or administrative materials documenting mailings and phone calls. Other documents falling into this category detail information about Anderson Chemical Company; summarize steps taken in the Eco-Lite investigation and information gathered to date; and memorialize Anderson Chemical Company's response to the investigation as it unfolded. Assuming without deciding that any of these materials have even minimal relevance, this Court further finds that they should be excluded pursuant to Rule 403, as their *de minimis* probative value is substantially outweighed by the danger of wasting time or needless presentation of cumulative evidence.

### 2. Information Concerning Other Products

The materials falling into category (3)—documents concerning other fire-starter products— include an internal Eco-Lite document comparing the Eco-Lite product with a competing product, Alcolite [Doc. 677-3 at 21–23]; a series of handwritten notes memorializing burn tests which were conducted on a charcoal grill using five different fire-starter products, including Eco-Lite [*Id.* at 28–34]; part of a material safety data sheet for an unspecified product [*Id.* at 19]; and a product safety data sheet for a type of Sterno gel fuel [*Id.* at 16–18]. None of these materials indicate that the products described therein are defective or describe any accidents caused by use of same. This Court therefore finds that to the extent these materials are relevant, plaintiff has failed to present a factual foundation sufficient for this Court to make the "substantial similarity" determination necessary to admit them.

### 3. Other Lawsuits & Consumer Complaints

The category (4) materials—those related to other lawsuits and consumer complaints[7]—are likewise inadmissible for several reasons. First, to the extent these documents are offered for their truth, they raise the specter of hearsay. Plaintiffs argue in very general terms that all of the CPSC materials fall within the public records exception; this argument proves too much. Even if these materials qualified as public records based merely upon their inclusion in the investigative file—a dubious proposition, given that most are neither records of (1) the office's activities, (2) matters observed while under a legal duty to report, nor (3) factual findings, *see* Fed. R. Evid. 803(8)(A)—they present a double hearsay problem. *See* **United States v. Fabio**, 394 F.2d 132, 133–34 (4th Cir. 1968) (excluding police report that contained an out-of-court witness statement); **Parsons v. Honeywell, Inc.**, 929 F.2d 901, 907 (2d Cir. 1991) (explaining that statements made to an official under a duty to report by third parties under no such duty are not admissible merely because the official memorializes them in his report); **Doe v. Bd. of Educ.**, —F. Supp. 2d—, 2013 WL 6065269, at *9 (D. Md. 2013) (citing **Fabio**) (excluding public record on hearsay-within-hearsay grounds). Plaintiff has failed to demonstrate that these out-of-court statements by consumers and litigants fall within an exception to the hearsay rule.

Even assuming that plaintiff could establish the degree of similarity necessary to offer these materials to prove notice, avoiding the hearsay problem, this Court finds that

---

[7] This category includes: the George Lindsey materials [Doc. 677-3 at 8–13, 24–26; Doc. 677-5 at 37–40]; the Gary Stevenson materials [Doc. 677-3 at 27; Doc. 677-5 at 44–49]; the Annie Taylor materials [Doc. 677-3 at 35–37; Doc. 677-5 at 17–19]; the Michael Graham materials [Doc. 677-3 at 38–40; 677-5 at 42]; the Beier consumer complaint [Doc. 677-5 at 31–33]; the Baker consumer complaint [Doc. 677-4 at 44–50]; the Neubarth materials [Doc. 677-4 at 8–10]; and the W.A. Lang letter [Doc. 677-3 at 42–43].

the materials should be excluded under Rule 403, as their probative value is substantially outweighed by the dangers of confusing the issues, misleading the jury, and undue delay occasioned by inevitable mini-trials concerning the similarity of each of these incidents to A.N.'s accident. As explained below, this Court will permit the introduction of an official CPSC report and certain Eco-Lite recall materials which reference "consumer complaints" and describe the danger presented by spraying Eco-Lite over a heat source. This Court believes that admission of those materials but exclusion of the consumer complaint letters and litigation-related documents strikes an appropriate balance between admission and exclusion of these materials under Rules 401 and 403.

### 4. Materials Directly Related to the Recall

This Court further finds that those documents directly related to the Eco-Lite recall—the April 1991 press release announcing the recall [Doc. 677-1] and the packet of recall materials sent to Eco-Lite distributors and retailers, including a product recall notice and a poster [Doc. 677-4 at 15–17]—are admissible for purposes of proving notice but inadmissible for purposes of proving negligence or defect in fact.

As explained in the press release announcing the recall, Eco-Lite is an alcohol-based fire-starter product which "is much more flammable than . . . other charcoal lighter fluids, which are petroleum-based." [Doc. 677-1]. CPSC stated that because "Eco-Lite is made of alcohol and has a low flash point," the product "may flash back to the bottle and explode if it is sprayed over hot charcoal." *Id.* Further, the press release noted that CPSC was aware of "five reports of the bottles exploding in consumers' hands when [Eco-Lite] was sprayed on hot charcoal," causing serious injury. *Id.*

In this Court's opinion, this evidence easily establishes a degree of similarity

9

between Eco-Lite and Diamond Gel sufficient to permit admission of the recall materials for purposes of proving notice. Like Eco-Lite, Diamond Gel is an alcohol-based fire-starter product which has a lower flash point than many other fire-starter products more familiar to consumers. Plaintiff's allegations—that the Gel's low flash point renders it explosive at room temperature and that A.N. was injured when an explosion resulted from squirting the Gel over hot charcoal—are nearly identical to the problems with Eco-Lite identified by the CPSC which precipitated the recall.

However, this Court is unwilling to permit the introduction of these materials for purposes of proving negligence or defect in fact. Despite their similarities, Diamond Gel and Eco-Lite are different products produced by different manufacturers. While plaintiffs' allegations related to the low flash point of the Gel are an important part of their theory of the case, plaintiffs also allege defects in the Gel's bottle and cap, and the recall materials do not identify problems with the Eco-Lite bottle and cap or even describe same with any level of specificity. Plaintiff has failed to demonstrate the substantial degree of similarity required to admit these materials for purposes of proving negligence or defect.

### 5. CPSC Reports

Finally, plaintiffs seek to admit several reports contained within the CPSC investigative file. These reports include an epidemiologic report [Doc. 677-4 at 37, 40–43]; a laboratory/compliance summary [Doc. 677-4 at 53–58]; field activity reports concerning several Eco-Lite retail locations [Doc. 677-5 at 50–57]; a field activity report prepared after the initial inspection of Anderson Chemical Company [Doc. 677-5 at 20–27]; two consumer incident reports [Doc. 677-5 at 29–30, 34–35; Doc. 677-4 at 52]; and the CPSC Preliminary Staff Determination [Doc. 677-4].

This Court finds that for the reasons set forth in section III.A.i.4, *supra*, the CPSC Preliminary Staff Determination, which summarizes the findings of the CPSC concerning Eco-Lite as of January 30, 1991, just prior to issuance of the recall, is admissible for purposes of proving notice. All of the remaining reports, however, must be excluded under Rule 403. All of these reports were prepared as a result of consumer complaints and accidents involving Eco-Lite, and all describe those complaints and accidents therein. As was true for the consumer complaints and litigation-related materials, even assuming that plaintiff could establish the degree of similarity required to admit these reports, the out-of-court statements reproduced therein raise double hearsay concerns, and the probative value of the reports is substantially outweighed by the dangers of confusing the issues, misleading the jury, and undue delay occasioned by inevitable mini-trials concerning the similarity of each of these incidents to A.N.'s accident.

### ii. Neubarth Deposition

This Court finds that the testimony of David Neubarth, an Eco-Lite consumer who was injured by the product in 1990, must be excluded under Rule 403. Plaintiffs learned of Neubarth through certain materials produced within the CPSC investigative file. [Doc. 677 at 5]. Neubarth was severely burned when he sprayed Eco-Lite into a wood-burning Franklin stove over ashes he believed to be extinguished, causing the Eco-Lite bottle to burst and spray Neubarth with its contents. *See* [Doc. 677-10 at 27:2–25]. Although the circumstances of Neubarth's accident do echo the circumstances of A.N.'s, this Court is of the opinion that as explained above, Eco-Lite is insufficiently similar to Diamond Gel to permit introduction of the Neubarth testimony for purposes of proving defect or negligence. Further, this Court finds that the probative value of Neubarth's testimony is substantially

outweighed by the dangers of unfair prejudice, confusing the issues, and misleading the jury. Finally, this Court wishes to avoid the necessity of a trial within a trial concerning the Neubarth incident, a concern aggravated by the incident's remoteness in time to A.N.'s. *See **Jaguar Cars***, 915 F.2d at 649 (noting that prior-accident evidence is only admissible where the prior accidents "were not too remote in time").

### iii. Cederberg Letter & Documents

In 2005, attorney James Cederberg sent a letter and accompanying packet of materials to defendant PSC, the CPSC, and a Whole Foods regional purchaser after seeing Eco-Start, an alcohol-based fire-starter gel product manufactured by PSC, for sale on Whole Foods shelves in Colorado. The documents concern three alcohol-based fire-starter products: Eco-Start, Eco-Lite, and Ultra Lite, also known as Enferno/Eco-Char. This Court finds that all of these documents, with the exception of the two letters from John Droishagen to Jim Colford [Doc. 677-11 at 44–54], are admissible for purposes of proving notice. Defendants themselves acknowledge that Eco-Start and Diamond have only "minor differences . . . that do not affect their flammability." [Doc. 698 at 12–13]. The pertinent similarities between Diamond Gel and Eco-Lite have already been discussed in section III.A.i.4, *supra*, and need not be repeated here. Ultra Lite is also an alcohol-based fire-starter product with an unusually low flash point. The problems described in the Cederberg are the products' potential to flash back and cause an explosion. *See* [Doc. 677-11 at 5]. Under the relaxed similarity standard applicable to evidence offered for purposes of notice, plaintiff has demonstrated the requisite degree of similarity between Diamond Gel and these products.

Once again, however, this Court declines to permit the admission of these materials for purposes of proving negligence or existence of defect, as plaintiffs have not shown the substantial degree of similarity required and the evidence is therefore irrelevant when offered for those purposes. Finally, this Court holds that the Droishagen/Colford letters, which describe a number of legal claims concerning Ultra Lite, must be excluded for the reasons set forth in section III.A.i.3, *supra*.[8]

### iv. Firepots-and-Gel-Fuels Materials

This Court further finds that the evidence related to firepots and other gel fuels, including the 2011 CPSC Briefing Package on Firepots and Gel Fuel and the 2013 National Institute of Standards and Technology ("NIST") Evaluation of Firepots and Gel Fuels, is inadmissible. First, these materials are clearly inadmissible for purposes of proving notice, as they were released after A.N.'s accident occurred. *See, e.g.*, **Exum v. Gen. Elec. Co.**, 819 F.2d 1158, 1163 (D.C. Cir. 1987) (noting subsequent incidents are inadmissible to a manufacturer had notice). Second, these materials are inadmissible for purposes of proving negligence or defect because plaintiff has failed to make the requisite showing of substantial similarity both between Diamond Gel and these products and between A.N.'s accident and the accidents described in the materials. Diamond Gel is not a pourable gel fuel intended to be used in a firepot. Some of the products described in these materials are single-use, non-refillable open containers. The mere fact that all are alcohol-based is not enough to admit them to prove negligence or defect.

---

[8] Several of the Cederberg documents contain references to napalm. *See* [Doc. 677-11 at 22]. This Court reminds plaintiffs that references to napalm at trial are prohibited for the reasons set forth in this Court's Order [Doc. 725] dated January 15, 2014.

Finally, even if these materials had even minimal relevance, this Court would nevertheless exclude them under Rule 403, as their probative value is substantially outweighed by the dangers of unfair prejudice, confusing the issues, and undue delay caused by inevitable mini-trials regarding each product and incident documented.

### B. Plaintiffs' Motion

Plaintiffs' Motion *in Limine* seeks to preclude any evidence or argument proffered by defendants concerning the alleged *absence* of other accidents, incidents, or lawsuits involving the Diamond Gel itself. Plaintiffs' Motion is **DENIED**.

In general, courts have recognized that the absence of prior accidents involving a product may be admissible in a product liability case to show (1) absence of defect, (2) the lack of a causal relationship between plaintiff's injury and the defect alleged, (3) the nonexistence of an unduly dangerous situation, and (4) lack of notice. ***Pandit v. Am. Honda Motor Co.***, 82 F.3d 376, 380 (10th Cir. 1996); ***Espeaignnette v. Gene Tierney Co.***, 43 F.3d 1, 9 (1st Cir. 1994). While the Fourth Circuit has never directly confronted the question, it has cited approvingly to a district court's reasoning, in holding such evidence admissible, that evidence of the lack of other accidents "is fairly common in cases where one of the parties has alleged that a product was defective." ***Columbia Comm'ns Corp. v. EchoStar Satellite Corp.***, 2 Fed. Appx. 360, 370 (4th Cir. 2001). The modern trend, moreover, is to admit such evidence. *See* McCormick on Evidence § 200 at nn. 30–42 and surrounding text (collecting cases) ("[F]ew recent decisions can be found applying a general rule of exclusion.").

Accordingly, this Court concludes that evidence of the absence of similar accidents

involving Diamond Gel is admissible, so long as defendants lay an adequate foundation for same. Like other-incident evidence in general, in this context, admissibility requires that the evidence "relate[ ] to a substantially similar product used in settings and circumstances sufficiently similar to those surrounding the product at the time of the accident to allow the jury to connect past experience with the accident sued upon." **Pandit**, 82 F.3d at 380 (citing **Klonowski v. Int'l Armament Corp.**, 17 F.3d 992, 996 (7th Cir. 1994); **Espeaignnette**, 43 F.3d at 10). While contending that at least 450,000 bottles of Diamond Gel were sold, defendants note that even the 300,000 figure proffered by plaintiffs would translate into over a million individual uses of the Gel. [Doc. 698 at 12]. Under these circumstances, this Court is unwilling to prohibit such evidence at this juncture. *See* **Espeaignnette**, 43 F.3d at 10 (holding evidence that company sold 87 similarly designed models of product that injured plaintiff without incident sufficient to establish admissibility). Plaintiffs remain free to renew their objection to the foundation defendants lay for such evidence at trial.

## **CONCLUSION**

Accordingly, this Court **ORDERS** as follows:

(1) The CPSC materials directly related to the Eco-Lite recall, as described in section III.A.i.4, are admissible for purposes of proving notice;

(2) The CPSC Preliminary Staff Determination report is admissible for purposes of proving notice;

(3) The remaining CPSC investigative materials are inadmissible;

(4) The Neubarth testimony is inadmissible;

(5) The Cederberg letter and documents, with the exception of the Droishagen/Colford letters, are admissible for purposes of proving notice;

15

(6) The firepots-and-gel-fuels materials are inadmissible; and

(7) Evidence concerning the absence of other accidents is admissible, provided that the proponents of such evidence first lay an adequate foundation for same at trial.

Defendants' Motions *in Limine* **[Docs. 620, 621, 631, 637]** are therefore **GRANTED IN PART** and **DENIED IN PART**, and Plaintiffs' Motion *in Limine* **[Doc. 624]** is therefore **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit a copy of this Order to counsel of record herein.

**DATED**: March 14, 2014.

JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE